IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| KIEONA JUANITA AREAL MANNING,<br><br>Plaintiff,<br><br>v.<br><br>PRINCIPLE LONG TERM CARE, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:24-cv-655 |

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Before this court is Defendant Principle Long Term Care, Inc.'s ("Principle") Motion for Summary Judgment. (Doc. 31.) For the reasons stated herein, Defendants' motion will be granted.

## I. BACKGROUND

Principle operates skilled nursing facilities that provide care for patients with limited ability to care for themselves. (Doc. 33 at 1; Doc. 34 at 2.)[1] Principle posted a job opening for a Certified Nursing Assistant ("CNA") position. (Doc. 32-1 at 39–40.) The CNA position responsibilities included providing "quality resident care," and "assistance with activities of daily living such as bathing, dressing, grooming, toileting,

[1] All citations in this Memorandum Opinion and Order to documents filed with this court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

incontinence care, transferring/mobility, and feeding." (Doc. 32-1 at 41, 43, 45.) Principle therefore required that CNAs be able to "lift, roll, push, and pull patients" to "perform patient care tasks such as bathing, transferring, and mobility tasks." (Doc. 34 at 2.)

Plaintiff Kieona Juanita Areal Manning ("Plaintiff") applied for the CNA positions at Principle. (See Doc. 32-1 at 19–20.) Plaintiff is a licensed CNA with prior experience working in skilled nursing facilities. (Doc. 32-1 at 29–32.) During the application and interview process at Principle, Plaintiff disclosed results of a Functional Capacity Evaluation ("FCE") conducted by a physician in the aftermath of an injury she experienced while lifting patients as a hospice aide. (Doc. 32-1 at 19–20.) The FCE documented a twenty-five (25) pound leg lift capability, a thirty-five (35) pound carry capability, and a push/pull capacity of forty (40) pounds. (Doc. 32-1 at 36.) After Plaintiff's FCE disclosure, Principle informed her that it could not hire her due to her physical restrictions. (Doc. 32-1 at 20.)

Plaintiff filed EEOC charges against Principle Grove, alleging disability discrimination under the Americans with Disabilities Act ("ADA"). (See Doc. 32-1 at 27.) Plaintiff, proceeding pro se, then filed the underlying complaint against

Principle, alleging that Defendant discriminated against her based on her disability in failing to hire her in violation of Title I of the ADA. (Doc. 2 at 4.) Principle answered Plaintiff's complaint, denied the allegations, and raised several defenses. (Doc. 12.) After the close of discovery, Defendant moved for summary judgment. (Doc. 31.) Plaintiff responded in opposition, (Docs. 36, 37), and Defendants replied in support, (Doc. 40).

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). This court's summary judgment inquiry is whether the evidence "is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The moving party bears the initial burden of demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. If the "moving party discharges its burden . . . , the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." McLean v. Patten Cmtys., Inc., 332 F.3d 714, 719 (4th Cir. 2003) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 586-87 (1986)). Summary judgment should be granted "unless a reasonable jury could return a verdict in favor of the nonmovant on the evidence presented." Id. at 719 (citing Liberty Lobby, 477 U.S. at 247–48).

## III. ANALYSIS

### A. Failure to Hire

Plaintiff alleges that Principle denied her a position as a CNA due to her disability in violation of the ADA. (Doc. 2 at 4.) In response, Principle moves for summary judgment and argues that Plaintiff cannot perform the essential functions of the positions she applied for and no reasonable accommodations exist for Plaintiff's restrictions. (Doc. 31 at 7.) Principle argues that Plaintiff therefore cannot establish a prima facia case of disability discrimination because she is not a "qualified individual with a disability" under the ADA. (Id.)

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees . . . ." 42 U.S.C. § 12112(a). A qualified individual is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Failure-to-hire claims under the ADA are evaluated under a modified version of the McDonnell Douglas Corp. v. Green, framework. 411 U.S. 792 (1973). Under the McDonnell Douglas scheme, a plaintiff must first make a prima facie showing of discrimination by showing that she (1) is disabled within the meaning of the ADA; (2) applied for the vacant position; (3) was qualified for the position; and (4) was rejected for the position under circumstance giving rise to an inference of unlawful discrimination. See Raytheon Co. v. Hernandez, 540 U.S. 44, 49 n.3 (2003); Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005).

If a plaintiff establishes a prima facie case, the burden of persuasion shifts to the defendant to rebut the presumption of discrimination by producing evidence that Plaintiff was not hired for "a legitimate, nondiscriminatory reason." Lane v. Wal-Mart Stores, Inc., 2000 WL 1481638, at *3 (D. Md. 2000) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000). "The defendant's burden is one of production and not of persuasion." Lane, at *3. If the defendant is able to meet its burden, "the presumption created by the prima facie case'drops out of the picture,' and the plaintiff bears the ultimate burden of proving that they have been the victim of intentional discrimination." Ennis v. National Ass'n of Business and

Educational Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 504–10, (1993)). This court now turns to the first step of the McDonnell Douglas analysis — whether Plaintiff has established a prima facie case.

### 1. **Qualified Individual**

In response to Defendants' argument that she is not a qualified individual under the ADA due to her physical limitations, Plaintiff argues that her medical condition is covered by the ADA and that she was previously employed as a CNA without accommodations and was able to perform the essential functions of that job. (Doc. 37 at 1, 3.)

As stated above, "only individuals who are qualified for the job they seek may state a claim for discrimination." Lamb v. Qualex, Inc., 33 F. App'x 49, 56 (4th Cir. 2002). To determine whether a person is a qualified individual, a court must consider whether that person is (1) able to perform the essential functions of the job in question, and if not, (2) whether the person could do the job with reasonable accommodation. Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal., 31 F.3d 209, 213 (4th Cir. 1994) (citing Chandler v. City of Dallas, 2 F.3d 1385, 1393–94 (5th Cir. 1993)). And "Plaintiff bears the burden of demonstrating that she could perform the

essential functions of her job with reasonable accommodation." Tyndall, F.3d 209 at 213.

**i. Essential Functions**

Defendants argue that "lift[ing], push[ing], and pull[ing] a patient's entire weight, which is virtually always over 40 pounds and typically over 100 pounds" are essential functions of the CNA role that must be performed daily. (Doc. 32 at 9.) And they further argue that "CNAs must be able to lift patients, maneuver them into wheelchairs, and assist them with bathing, dressing, using the restroom, and mobility." (Id.) Plaintiff responds by arguing that "most skilled facility[ies] ha[ve] lifts to use to transfer" which means that "no aide is physically lifting a resident." (Doc. 37 at 4.)

"A function is essential as long as it 'bears more than a marginal relationship to the job at issue.'" Elledge v. Lowe's Home Centers, LLC, 979 F.3d 1004, 1009 (4th Cir. 2020) (quoting Rohan v. Networks Presentations LLC, 375 F.3d 266, 279 (4th Cir. 2004)). And the ADA states that in determining a position's essential functions, "consideration shall be given to the employer's judgment." 42 U.S.C. § 12111(8). As such, "the decision about a position's essential functions belongs, in the first instance, to the employer," and an employer's judgment on the issue "merits 'considerable deference' from the courts."

Elledge, 979 F.3d at 1009 (quoting D'Amico v. City of New York, 132 F.3d 145, 152 (2d Cir. 1998)). The written job description is "relevant to the employer's judgment" but is not dispositive. Id. (quoting 42 U.S.C. § 12111(8)) (internal quotation marks omitted). A court therefore "must consult the full range of evidence bearing on the employer's judgment, including the testimony of senior officials and those familiar with the daily requirements of the job." Id.

Relevant evidence that a function is essential includes, but is not limited to:

> (i) The employer's judgment as to which functions are essential; (ii) Written job descriptions prepared before advertising or interviewing applicants for the job; (iii) The amount of time spent on the job performing the function; (iv) The consequences of not requiring the incumbent to perform the function; (v) The terms of a collective bargaining agreement; (vi) The work experience of past incumbents in the job; and/or (vii) The current work experience of incumbents in similar jobs.

E.E.O.C. v. Dollar Gen. Corp., 252 F. Supp. 2d 277, 285 (M.D.N.C. 2003) (quoting 29 C.F.R. §1630.2(n)(3)). Courts do not look to "the employee's particular experience," and "[t]hat an employee may typically be assigned to only certain tasks of a multifaceted job 'does not necessarily mean that those tasks to which she was not assigned are not essential.'" E.E.O.C. v. Womble Carlyle Sandridge & Rice, LLP, 616 F. App'x 588, 594 (4th

Cir. 2015) (quoting Phelps v. Optima Health, Inc., 251 F.3d 21, 26 (1st Cir. 2001)).

Here, the record demonstrates that lifting, carrying, pushing, and pulling weights greater than 40 pounds are essential functions of a CNA. First, Principle provided sworn affidavits of employees responsible for hiring and assessing employee accommodations. Principle's Chief Human Resources Officer — who previously served as Vice President of Employee Experience — stated that CNAs "must be able to lift patients in order to take them to meals; transfer them from bed to a wheelchair; push them in a wheelchair; bathe and groom them; and perform other activities of daily living." (Doc. 33 at 2.) According to the declaration, this requires the ability to "push and pull the entire weight of a patient, which is always over 40 pounds and typically over 100 pounds" daily. (Id.) Principle's Director of Process Implementation — who previously served as Director of Operations Support — similarly stated that "CNAs must be able to lift, roll, push, and pull patients" daily because those functions "are necessary to perform patient care tasks such as bathing, transferring, and mobility tasks." (Doc. 34 at 2.)

Second, the record includes job descriptions for the CNA position to which Plaintiff applied. These descriptions are

consistent with the affidavits discussed above and require CNAs to provide "assistance with activities of daily living such as bathing, dressing, grooming, toileting, incontinence care, transferring/mobility, and feeding." (Doc. 32-1 at 41, 43, 45.)

Third, Plaintiff's deposition testimony confirms that heavy lifting, carrying, pushing, and pulling are essential functions of the CNA position. Plaintiff acknowledged that CNAs must push and pull all of a patient's weight, which is typically more than 100 pounds and almost always over 80 pounds, even when using a lift or wheelchair. (Doc. 32-1 at 2–3, 5.) Indeed, Plaintiff stated that her underlying injury was caused by "lifting or assisting with lifts for a client and rolling dead weight in a facility." (Id. at 6.) And when asked whether lifting, pushing, and pulling were part of the duties she performed in a prior CNA role, Plaintiff replied in the affirmative. (Id. at 19.) At other points in the deposition Plaintiff gave inconsistent answers, insisting that bending down was not required to move patients, patients are often able to push themselves, she was "capable of doing the job," and her lifting restriction "doesn't matter." (Id. at 2, 4, 25.) But she nevertheless recognized that her FCE was accurate in stating that her CNA role included "the ability to lift up to a hundred pounds." (Id. at 12.)

Plaintiff's attempts to contradict the evidence in the record concerning the essential functions of the CNA role at Principle are unavailing. Defendants provided statements from senior officials at the facilities who confirmed that lifting, carrying, pushing, and pulling weights greater than 40 pounds are daily requirements for both positions. Elledge, 979 F.3d at 1009. Plaintiff's only evidence to the contrary is her personal experience in similar roles, which is not part of this court's essential function analysis. Womble Carlyle, 616 F. App'x at 594. And, in any event, "a plaintiff cannot create a genuine dispute of material fact by contradicting [her] own statements." Keith v. Volvo Grp. N. Am., LLC, No. 23-1178, 2024 WL 1193096 (4th Cir. Mar. 20, 2024) (citing Erwin v. United States, 591 F.3d 313, 325 n.7 (4th Cir. 2010)). Affording considerable deference to Principle's judgment, this court determines that lifting, carrying, pushing, and pulling weights greater than 40 pounds are essential functions of the CNA position to which Plaintiff applied.

**ii. Reasonable Accommodation**

Having determined that lifting, carrying, pushing, and pulling weights heavier than 40 pounds are essential functions of the positions Plaintiff applied to, this court must next determine whether Plaintiff could perform these essential

functions with reasonable accommodations. Defendants argue that "no accommodation was available that would allow [Plaintiff] to perform the essential functions of the position" because Plaintiff's suggested accommodations would "shift essential physical duties of her position to another employee." (Doc. 32 at 10-11 (quoting Saphilom v. Nationwide Mutual Ins. Co., No 18-1180, 2020 WL 1638415, at *8 (D. Md. Apr. 2, 2020) (internal quotation marks omitted).) Plaintiff responds that "[m]odifying [her] job task by redistributing heavy lifting duties among [the] team" is an appropriate accommodation because it "need[s] to be done any way." (Doc. 37 at 4.)

"A reasonable accommodation is one that 'enables [a qualified] individual with a disability . . . to perform the essential functions of [a] position.'" Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 580 (4th Cir. 2015) (quoting 29 C.F.R. § 1630(o)(1)(ii)). "The ADA requires a reasonable accommodation be made for a known physical or mental limitation of a qualified disabled individual unless the accommodation would impose an undue hardship on the operation of the business." Dollar General Corp., 252 F. Supp. 2d at 289 (citing 42 U.S.C. § 12112(b)(5)(A)).

But "[a]n employer is not required to grant even a reasonable accommodation unless it would enable the employee to

perform all of the essential functions of her position." Jacobs, 780 F.3d at 581. And "an accommodation that would require other employees to work harder is unreasonable." Crabill v. Charlotte Mecklenburg Bd. of Educ., 423 F. App'x 314, 323 (4th Cir. 2011) (stating that an accommodation that would shift an employee's duties to other employees in her department was unreasonable) (internal quotation marks omitted). The Plaintiff bears the burden of both identifying an accommodation and demonstrating that the accommodation is reasonable. Lamb, 33 Fed. App'x at 59 (citing Halperin v. Abacus Tech. Corp., 128 F.3d 191, 197 (4th Cir. 1997), abrogated on other grounds by Baird ex rel. Baird v. Rose, 192 F.3d 462 (4th Cir. 1999)).

Here, Plaintiff's suggested reasonable accommodations would place an undue hardship on Principle by requiring other employees to take on Plaintiff's responsibilities. Plaintiff admitted that the FCE she submitted to Principle stated that she "d[id] not possess the functional capacity to perform all aspects of her fully duty job." (Doc. 32-1 at 12.) To accommodate her restrictions, Plaintiff identified several modifications to the CNA duties. First, she suggested that if her "sciatic nerve got inflamed" while "working with the heavier patient[s], instead of giving me those heavier patient assignment[s]," Principle could "put [her] on the physical

therapy floor" or "put [her] somewhere else to help someone else instead of the continual assignment of the heavier people." (Doc. 32-1 at 21.) Second, Plaintiff also stated she could "work through" her injury because she "ha[s] worked through it before . . . ." (Doc. 32-1 at 21, 23.)

In her response in opposition to Defendant's motion for summary judgment, Plaintiff continues to make similar arguments regarding reasonable accommodations. She appears to suggest that other staff members could assist her in carrying out her duties, stating that Defendants could "redistribute[e] heavy lifting duties among [the] team," (Doc. 37 at 4). Plaintiff also implies that she could simply work in the CNA position without any accommodations, with repeated references to working at another skilled nursing facility without accommodations. (Doc. 37 at 1, 3, 4.) Plaintiff also contends that Defendant failed to "engage in the interactive process for reasonable accommodations . . . ." (Id. at 4.) She maintains this argument despite her earlier admissions that she did not discuss an accommodation with Defendant during the hiring process or seek an updated FCE. (Doc. 32-1 at 21–22, 23.)

Contrary to Plaintiff's arguments, "an employee cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process."

Crabill, 423 Fed. App'x at 323 (citing Rehling v. City of Chicago, 207 F.3d 1009, 1016 (7th Cir. 2000)); see also Wilson v. Dollar Gen. Corp., 717 F.3d 337, 346–47 (4th Cir. 2013). Instead, Plaintiff "must demonstrate that the employer's failure to engage in the interactive process resulted in a failure to identify an appropriate accommodation . . . ." Id. (citing Rehling, 207 F.3d at 1016). Here, Plaintiff has failed to make such a showing because "the ADA does not require," as Plaintiff's identified accommodations would, "an employer to reallocate essential job functions or assign an employee 'permanent light duty.'" Id.; see Carter v. Tisch, 822 F.2d 465, 467 (4th Cir. 1987). By Plaintiff's own account, her suggested reasonable accommodation would be for Defendants to assign her to lighter patients or a different patient floor. (Doc. 32-1 at 21–22.)

Furthermore, "an accommodation that would require other employees to work harder is unreasonable." Crabill, 423 Fed App'x at 323 (quoting Mason v. Avaya Communications, Inc., 357 F.3d 1114, 1121 n.3 (10th Cir. 2004)); see also 29 C.F.R. § 1630.2(p)(2)(v) (stating that factors to consider include "[t]he impact of the accommodation upon the operation of the facility, including the impact on the ability of other employees to perform their duties and the impact on the facility's ability to

conduct business”). According to affidavits from senior officials at Principle, Plaintiff applied for a position with “a division of CNAs who filled in staffing gaps at Principle skilled nursing facilities,” and as such, “CNAs on the team would not know where they would fill in on a given day and would never be able to choose which type of patient they would be caring for or what type of floor or room in which they would be working.” (Doc. 34 at 1.) And a nursing assistant who cannot lift a patient “will not be able to assist with essential care tasks, which will severely degrade patient care and lead to negative or catastrophic outcomes” and even “require overstaffing [the] facilities.” (Doc. 33 at 2.)

Plaintiff offers no evidence that creates a genuine dispute of material fact regarding the reasonableness of her proposed accommodations. Her suggestions regarding reassignment to different patients have the effect of “excusing [her] from all heavy lifting” and thus “would not have been a reasonable accommodation.” Womble Carlyle, 616 F. App’x 588 at 595; see Doc. 32-1 at 21(suggesting that “instead of giving [her] those heavier patient assignment[s],” Defendant “put [her] somewhere else to help someone else instead of the continual assignment of the heavier people”). And her alternate suggestion that she could instead lift weights in excess her stated restrictions is

another attempt to "create a genuine dispute of material fact by contradicting [her] own statements" that the restrictions documented in her FCE were valid and did not have an expiration date. Keith, 2024 WL 1193096, at *2; see Doc. 32-1 at 21, 23. Plaintiff has therefore failed to carry her burden of identifying a reasonable accommodation that would allow her to perform the essential functions of the CNA and Medication Aide positions. See Wulff v. Sentara Healthcare, Inc., 513 F. App'x 267, 271–72 (4th Cir. 2013) (finding the plaintiff's "attempts to discredit the form that her physician's assistant completed (and thus [the defendant's] reliance on the form in its decision to remove [the plaintiff] from the work schedule) unavailing" and that the plaintiff therefore "failed to generate a genuine dispute of material fact critical to her ability to support her prima facie case").

Because this court has determined there are no genuine disputes of material fact regarding the essential functions of the CNA position to which Plaintiff applied or the reasonableness of Plaintiff's proposed accommodations, this court concludes that Plaintiff is not qualified individual under the ADA. As such, Plaintiff has failed to establish a prima

facie failure to hire case.[2] This court will therefore grant Defendants' motion for summary judgment and dismiss Plaintiff's claims with prejudice.[3]

## IV. CONCLUSION

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment, (Doc. 31), is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

A judgment is entered contemporaneously herewith.

This the 10th day of November, 2026.

William L. Osteen, Jr.
United States District Judge

---

[2] Plaintiff's complaint also appears to allege a failure to accommodate claim. (See Doc. 2 at 4-5.) To the extent Plaintiff maintains that allegation as a separate claim, it fails for the reasons stated herein. Plaintiff has not established a prima facia case of disability discrimination because she is not a qualified individual with a disability under the ADA.

[3] In response to Defendant's motion for summary judgment, Plaintiff argues that Defendant's motion is untimely because it was filed more than thirty days after the close of discovery. (Doc. 37 at 1.) However, Federal Rule of Civil Procedure 6 provides that when the last day of a time period stated in days falls on a weekend, the due date is computed to fall on the next weekday. Fed. R. Civ. P. 6(a)(1)(C). Here, discovery closed on July 17, 2025. (Doc. 19 at 1; see Docket Entry 3/20/2025.) Thirty days from that date was Saturday August 16, 2025. As such, the deadline to file the motion for summary judgment is properly calculated as Monday, August 18, 2025, the day Defendant filed its motion. (Doc. 31.) Defendant's motion is therefore timely.